| | | |
|---|---|---|
| ROBERT S. PETTY, JR., Individually and in the capacity of the Administrator for The Estate of Brenda O. Petty, ) ) ) ) ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | 1:05CV00954 | |
| CAROLINA BIOLOGICAL SUPPLY and MEDICAL LIFE INSURANCE COMPANY, ) ) ) ) | | |
| Defendants. ) | | |

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

Plaintiff Robert S. Petty, Jr. filed this action against Defendants Carolina Biological Supply ("CBS") and Medical Life Insurance Company ("MLIC"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., and making various claims under state law. The case was filed in North Carolina Superior Court and removed to federal court. This matter is before the court on motions by CBS and MLIC to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

Plaintiff Robert S. Petty, Jr. was the husband of Brenda Odell Petty, who is now deceased. Brenda Petty was an employee of CBS until her death in December 2001. As a benefit of her employment, Mrs. Petty participated in a group life insurance policy provided by MLIC. Plaintiff was the beneficiary of Brenda Petty's policy.

While she was employed by CBS, Brenda Petty was diagnosed with cancer. She underwent treatment but continued to work at CBS on a reduced schedule. In September 2000, she became unable to continue working and began a leave of absence. While on leave, she received benefits from disability insurance provided by CBS. After several months, CBS informed her that, in order to remain covered under the disability insurance, she was required to work as much as her health would allow. Accordingly, from May 2001 to September 2001, Mrs. Petty worked regularly, although the number of hours she worked per week varied; some weeks she worked more than thirty hours a week and some weeks she worked fewer.

Following Mrs. Petty's death, Plaintiff learned that it was the position of Defendants that he was not entitled to benefits from the life insurance policy. Defendants informed Plaintiff that Mrs. Petty had ceased to be eligible for coverage under the plan when she began working part-time hours, that is, fewer than thirty hours per week. Defendants indicated that, under her policy, Mrs. Petty had been entitled to convert to a private insurance policy. CBS indicated that it had given Mrs. Petty the

2

opportunity to make the conversion on November 9, 2001.  MLIC
indicated that her window of opportunity had lasted from May 14,
2001 to June 13, 2001.  In fact, Mrs. Petty had never been
informed of the consequences of working part-time hours, nor had
she been informed of the opportunity to convert to a private
policy.  Had she been so informed, she would have chosen to make
the conversion.

**II.  STANDARD OF REVIEW**

A defendant's motion to dismiss under Rule 12(b)(6) of the
Federal Rules of Civil Procedure tests the legal sufficiency of
the pleadings, but does not seek to resolve disputes surrounding
the facts.  <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952
(4th Cir. 1992).  A court must determine only if the challenged
pleading fails to state a claim upon which relief can be granted.
Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff
will ultimately prevail on her claim, but whether she is entitled
to offer evidence to support the claim.  <u>Revene v. Charles County
Comm'rs</u>, 882 F.2d 870, 872 (4th Cir. 1989).  A pleading "should
not be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  <u>Conley
v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  The
pleading must be liberally construed in the light most favorable
to the nonmoving party and the allegations made therein taken as
true.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S. Ct. 1843,
1849 (1969).

**III. ANALYSIS**

Plaintiff's claims arise from the decision denying him the proceeds of Mrs. Petty's life insurance policy. He has alleged causes of action under state law, including breach of contract, violation of fiduciary duties, bad faith, and negligence, as well as claims against both Defendants under FMLA. Both Defendants argue that the state law claims should be dismissed because they are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Additionally, each Defendant seeks dismissal of the FMLA claims against it, but they do so on separate grounds. Finally, each Defendant asks the court to deny Plaintiff's jury demand. The court will first consider whether Plaintiff's claims are preempted by ERISA, will proceed to evaluate Plaintiff's FMLA claims, and will conclude with a discussion of Plaintiff's entitlement to a jury trial.

**A. ERISA Preemption**

Defendants argue that because Plaintiff's state law claims deal with a benefit plan regulated by ERISA, they are preempted and should be dismissed. The ERISA preemption provision, 29 U.S.C. § 1144(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." Thus to find that Plaintiff's claims are preempted, the court must determine that the insurance policy was an "employee benefit plan" and that the claims "relate to" the plan.

4

The term "employee benefit plan" includes an "employee welfare benefit plan," id. § 1002(3), which is defined in part as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . death," id. § 1002(1). A life insurance plan maintained by an employer for its employees is an ERISA plan and has been treated as such by the courts. See, e.g., White v. Provident Life & Acc. Ins. Co., 114 F.3d 26, 27-28 (4th Cir. 1997).

Plaintiff concedes that Mrs. Petty's life insurance plan falls within the statutory definition. He argues, nonetheless, that the plan may not be within the scope of ERISA because it falls into one of the exceptions outlined in § 1003(b). That section exempts a plan from coverage if

> (1) such plan is a governmental plan . . .;
>
> (2) such plan is a church plan . . .;
>
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws;
>
> (4) such plan is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens; or
>
> (5) such plan is an excess benefit plan . . . and is unfunded.

29 U.S.C. § 1003(b). Plaintiff does not specify which of these exceptions he believes may apply, nor does he point to

5

allegations that would indicate that the plan falls into an exception. A review of Plaintiff's amended complaint reveals that it contains no allegations that would enable the court to find, at this time, that the life insurance plan at issue falls into any of the exceptions. Based on the facts included in the complaint, the court concludes that the life insurance plan is an employment benefit plan for the purposes of § 1144(a).

This conclusion, however, is provisional. Plaintiff will have thirty days in which to conduct discovery and to present to the court evidence that Mrs. Petty's insurance plan falls within one of the statutory exceptions listed in § 1003(b). If Plaintiff presents such evidence, the court will reconsider the issue. If he does not submit evidence in that time period, the court's conclusion will stand. Discovery on other matters should proceed along the normal course of the litigation.

Having provisionally determined that Mrs. Petty's insurance plan is an ERISA plan, the court must next determine whether Plaintiff's claims "relate to" the life insurance plan. "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S. Ct. 2890, 2900 (1983). Included among the laws that fall into this category are those that "provide alternative enforcement mechanisms to ERISA's civil enforcement provisions." Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 190 (4th Cir. 2002). The civil enforcement provisions are found in 29 U.S.C. § 1132. "A state claim is an

alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under [§ 1132]." Id. at 191. Two provisions from that section are relevant to this action. Section 1132(a)(1)(B) provides a cause of action by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(c) creates a cause of action by a beneficiary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or to "obtain other appropriate equitable relief."

A conclusion that a claim could be brought under § 1132 gives rise to the additional conclusion that a claim is completely preempted. "ERISA's civil enforcement provision . . . completely preempts state law claims that come within its scope and converts these state claims into federal claims under § [1132]." Darcangelo, 292 F.3d at 187. Completely preempted claims should not be dismissed but treated as though they were brought under § 1132. Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 292 (4th Cir. 2003). Repleading is not necessary. Id. Thus, regardless of how a plaintiff has characterized the claims in the complaint, the court must consider the completely preempted state law claims as federal question ERISA claims and limit the remedies to those described in § 1132. Id.

7

Plaintiff has included in the amended complaint four claims for relief under state law: "breach of contract," "violation of fiduciary obligations," "bad faith," and "negligence." The latter three claims contain a variety of subclaims. The court will examine each of the claims in turn to determine whether it is preempted.

Plaintiff's "First Claim for Relief" is for breach of contract. Plaintiff alleges that Defendants breached the life insurance contract by mishandling his claim and denying him the benefits to which he was entitled. For a breach of contract claim, when "the contract in question is an ERISA plan, th[e] claim is clearly preempted." Darcangelo, 292 F.3d at 194-95. Because Plaintiff is attempting to enforce his rights under the ERISA plan, the claim falls within the scope of § 1132(a)(1)(b) and is completely preempted. The court will treat this claim as a claim under ERISA, and there is no need for Plaintiff to amend his complaint.

Plaintiff's "Second Claim for Relief" is titled "Violation of Fiduciary Obligations." This claim includes numerous subclaims, which cover several different actions by Defendants. Each of these subclaims implicates the fiduciary duties imposed by ERISA. ERISA imposes fiduciary duties in 29 U.S.C. § 1104(a)(1). That provision provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Violation of that provision may be remedied

8

through § 1132(c). Each of the subclaims can be read as an allegation that Defendants did not discharge their duties in the interest of the beneficiaries, so these claims fall within the scope of § 1132(c) and are preempted.

With regard to the information claims, the case law on this point is well-developed. ERISA requires that participants in a plan be given certain types of information about the plan. See 29 U.S.C. §§ 1021-1024. The primary vehicle for informing a participant of the terms of the plan is the "Summary Plan Description" ("SPD"). Failure to provide an accurate SPD may be treated as breach of fiduciary duty.[1] See Gaines v. Sargent Fletcher, Inc. Group Life Ins. Plan, 329 F. Supp. 2d 1198, 1219-22 (C.D. Cal. 2004) (holding that failure to comply with the disclosure requirements of 29 U.S.C. §§ 1021 and 1022 resulted in a breach of fiduciary duty); see also Riley v. Murdock, 890 F. Supp. 444, 452–53 (E.D.N.C. 1995) (treating failure to provide an accurate SPD as a potential breach of fiduciary duty and concluding that the facts indicated no such failure).

Additionally, a plan administrator may, under some circumstances, be required to go beyond the requirements of ERISA's notice provisions and provide to a participant additional information about the participant's rights under the plan. See Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 381–84 (4th

---

[1] Failure to provide an accurate SPD may also be remedied directly under § 1132(c), without reference to ERISA's fiduciary duty provisions.

9

Cir. 2001) ("[A]n ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent . . . ."). But see id. at 381 ("ERISA does not impose a general duty requiring ERISA fiduciaries to ascertain on an individual basis whether each beneficiary understands the collateral consequences of his or her particular election."); Barrs v. Lockheed Martin Corp., 287 F.3d 202, 207-08 (1st Cir. 2002) ("Absent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances."). These breaches of fiduciary duty would also fall within the scope of § 1132(a)(3).

Importantly, although Plaintiff's claims state a cause of action under § 1132(a)(3), the remedies sought by Plaintiff are not available under that provision. Section 1132(a)(3) only authorizes the court to "enjoin any act or practice" or award "other appropriate equitable relief." Claims for money damages, even when they are described in terms of equitable relief, are not available. LaRue v. DeWolff, Boberg & Assocs., Inc., 450 F.3d 570, 574-77 (4th Cir. 2006). Here, the only form of equitable relief requested by Plaintiff is a declaration that he is entitled to the proceeds of the insurance policy. Although stated in terms of a declaration, this is essentially a request for money damages, and could not be awarded under § 1132(a)(3).

Although Plaintiff's desired remedies are not available under § 1132(c), some of the subclaims may be remedied under § 1132(a)(1)(b). To the extent that Plaintiff claims that the breach of fiduciary duty resulted in a failure to pay him benefits to which he was entitled, the claim could also be brought under § 1132(a)(1)(b). See Teumer v. General Motors Corp., 34 F.3d 542, 545 (7th Cir. 1994) ("If one is in fact entitled to benefits under a plan and does not receive them for any reason, malicious or not, [§ 1132(a)(1)(b)] provides a remedy. . . ."). The problem with such a claim in the context of this particular set of allegations is that Plaintiff has alleged that Defendants' failure to perform their fiduciary duties resulted in the removal of Plaintiff's wife from the plan. As a result, Plaintiff's wife would not have been entitled to any additional benefits. Cf. Griggs, 237 F.3d at 385 n.7 (indicating that a plaintiff could not recover under § 1132(a)(1)(b) for a breach of fiduciary duty because he had already recovered all the benefits he was entitled to under his plan).

An alternative for proceeding on the information-related claims under § 1132(a)(1)(b) is for Plaintiff to attempt to enforce the terms of the plan as they were made known to his wife. For example, Plaintiff's wife may have received an SPD that did not inform her that her coverage would cease if she reduced her work load. If Plaintiff's wife reasonably read the SPD to indicate that the coverage continued as long as she was employed, Plaintiff may be able to enforce the terms of the SPD.

11

See Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 140 (4th Cir. 1993) ("[R]epresentations in a SPD control over inconsistent provisions in an official plan document."). To do so, Plaintiff would have to show either reliance on or prejudice resulting from the SPD available to his wife. Pierce v. Security Trust Life Ins. Co., 979 F.2d 23, 26 (4th Cir. 1992). Similarly, if no SPD was provided, Plaintiff may prevail if he can show reliance or prejudice from "the lack of notice of an accurate description of the terms of the plan." Gable v. Sweetheart Cup Co., 35 F.3d 851, 859 (4th Cir. 1994). By invoking one of these options, Plaintiff would be advancing the claim that he should recover under the provisions of the plan applicable to his wife, i.e. those of which she was made aware. This would be a claim for benefits under the plan and would be properly brought under § 1132(a)(1)(b).

A sixth subclaim contains an allegation that Defendants failed to provide Plaintiff's wife with an opportunity to convert her coverage under the group life insurance plan into an individual, private plan. The right to convert from a group plan to a private plan is a benefit governed by ERISA, and the benefit arises from the ERISA plan. See White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 28 (4th Cir. 1997) (discussing the nature of the conversion right and holding that "ERISA governs the right of conversion to an individual policy"). An allegation that Plaintiff's wife was denied the opportunity to

12

convert is an attempt to enforce a right under the plan, falls under § 1132(a)(1)(b), and is completely preempted.

Plaintiff's "Fifth Claim for Relief," alleging negligence, is subject to the same analysis. Plaintiff's claims of negligence are for the same behavior alleged as breaches of fiduciary duty: requiring Mrs. Petty to work and thereby causing her to become ineligible for the group life insurance, failing to provide notice of the termination of her coverage, and failing to properly advise her about her insurance. These allegations state the same claims under § 1132 stated by the allegations in the second claim for relief, and they are preempted for the same reasons.

Plaintiff's "Fourth Claim for Relief" is titled "Bad Faith." With regard to this claim, Plaintiff quotes, without citing, N.C. Gen. Stat. § 58-63-15(11), a statute setting forth behavior considered to be "unfair claim settlement practices." Although there is no cause of action directly under § 58-63-15(11), violations of that provision are also violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), § 75-1.1. Gray v. North Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 680–84 (N.C. 2000). Such actions are "distinct from breach of contract actions" because "even if an insurance company rightly denies an insured's claim . . . the insurance company nevertheless must employ good business practices which are neither unfair nor deceptive." Nelson v. Hartford Underwriters Ins. Co., 630 S.E.2d 221, 231 (N.C. Ct. App. 2006).

13

To the extent that this claim alleges that the contract was breached, it would fall within the scope of § 1132(a)(1)(B). But even if it alleges misbehavior beyond a breach of contract, the claim is preempted. These allegations of bad faith deal with the procedure by which Plaintiff's insurance claim was processed. Processing a claim and making a decision about whether a beneficiary is eligible for benefits are a traditional duty of a fiduciary. Darcangelo, 292 F. 3d at 193. Thus, if Defendants acted improperly in the course of making an eligibility determination, it would be a breach of fiduciary duty; specifically, it would be a breach of the requirement that an ERISA fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." See id. (discussing when an action should be categorized as a breach of fiduciary duty). Thus, despite how this claim is titled by Plaintiff, it is actually a claim of breach of fiduciary duty and is subject to the discussion above. For that reason, the claims of bad faith and unfair and deceptive trade practices fall within the scope of § 1132(c) and are completely preempted. See Lippard v. Unumprovident Corp., 261 F. Supp. 2d 368, 375 (M.D.N.C. 2003) ("To the extent that ERISA redresses the mishandling of benefit claims or other misadministration of employee benefit plans, it also preempts analogous causes of action, whatever their form or label under state law.").

The court concludes that each of Plaintiff's claims is an alternative means of enforcing rights under ERISA. For this

14

reason, the state law claims are completely preempted. Plaintiff's amended complaint does not state a cause of action under state law, but it does state causes of action under § 1132(a)(1)(B) and (a)(3). The court considers the preempted claims to be essentially mistitled rather than nonexistent, therefore, the claims will not be dismissed. Plaintiff remains free to seek to amend his complaint again, but amendment is not necessary for this case to proceed.

### B. FMLA Claims

Each Defendant has moved to dismiss Plaintiff's FMLA claims. CBS argues that there cannot have been a violation of FMLA because FMLA does not require an employer to keep an employee enrolled in a life insurance plan while the employee is on leave. For its part, MLIC argues that it may not be held liable under FMLA because it was not Mrs. Petty's employer. The court will first discuss CBS's argument and then move to that of MLIC.

#### 1. CBS

CBS argues that it cannot have violated FMLA because it at most deprived Plaintiff's wife of her life insurance benefits, and FMLA does not require an employer to maintain life insurance during leave. The relevant FMLA provision, 29 U.S.C. § 2614(a)(2), indicates that "[t]he taking of leave under section 2612 of this title shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." Additionally, § 2614(c) requires an employer to maintain coverage of an employee under a group health plan while the employee is on

15

FMLA leave. CBS argues correctly that the latter provision contains no instructions regarding life insurance, so, if the statute does deal with Mrs. Petty's life insurance plan, the requirement must come from § 2614(a)(2).

Plaintiff's claim, then, depends on whether his wife's participation in the life insurance plan was a benefit that had accrued before she took her leave. In applying FMLA, the implementing regulations provide a useful source of guidance. See Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 547–49 (4th Cir. 2006). For this section, the regulation states that "[a]n employee's entitlement to benefits other than group health benefits during a period of FMLA leave . . . is to be determined by the employer's established policy for providing such benefits when the employee is on other forms of leave (paid or unpaid, as appropriate)."[2] 29 C.F.R. § 825.209(h). The point is reiterated in a later provision that states that "if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave." 29 C.F.R. § 825.220(c).

---

[2] This regulation is elaborated in a Treasury Regulation, 26 C.F.R. § 1.125-3, which states "FMLA does not require an employer to maintain an employee's non-health benefits (e.g., life insurance) during FMLA leave. An employee's entitlement to benefits other than group health benefits under a cafeteria plan during a period of FMLA leave is to be determined by the employer's established policy for providing such benefits when the employee is on non-FMLA leave (paid or unpaid)."

16

The court finds this interpretation both consistent with the statute and persuasive. Mrs. Petty was entitled to participate in the plan prior to taking leave because CBS had made the plan available to its employees. If, under either CBS policy or the terms of the agreement, the plan remained available to employees while they were on leave, then Mrs. Petty was entitled to maintain her coverage; thus, life insurance coverage was a benefit that had accrued. In contrast, if CBS policy or the terms of the plan revoked coverage from those employees on leave, Mrs. Petty was never entitled to participate during her leave period, and no benefit had accrued.

Based on this understanding of the statute, then, Plaintiff has sufficiently alleged a cause of action. Plaintiff has alleged the following: (1) the plan contained no provision that would exclude Mrs. Petty from coverage while she was on leave, but CBS nonetheless excluded her; and (2) if the plan did contain such a provision, it also contained a requirement that Mrs. Petty be offered an opportunity to convert to a private pay policy, and she never had that opportunity. Either allegation would support a finding that CBS failed to comply with its own policy regarding employees on leave. For this reason, CBS's motion to dismiss the FMLA claim will be denied.

### 2. MLIC

Defendant MLIC has asked the court to dismiss the FMLA claim against it because it was not Mrs. Petty's employer and thus there is no cause of action against it under the statute. FMLA's

17

civil enforcement provision states that "any employer" who interferes with or denies any rights provided to an employee under the act is liable for damages. 29 U.S.C. § 2617(a). Elsewhere, FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." Id. § 2611(4)(A)(i). The term "employer" also includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Id. § 2611(4)(A)(ii)(I). Plaintiff concedes that MLIC was not Mrs. Petty's actual employer but argues that MLIC was acting in the interest of CBS in providing life insurance coverage to Mrs. Petty.

Plaintiff cites no case law in favor of his position that an insurance company which provides a group insurance plan comes within this definition. At least one court has concluded that an insurance company is not liable as an employer under FMLA. See Elie G. Ghattas Trust v. Unumprovident Life Ins., No. 1:03CV1614A, 2004 WL 2709715, at *10 (E.D. Va. Oct. 5, 2004). Nonetheless, the court is not convinced that an insurance company could never, as a matter of law, be held liable under FMLA and will therefore examine the facts of this case.

Generally, when determining whether a person was acting in the interest of an employer for the purpose of FMLA, courts look to the nature and degree of control the person had over the

18

employee.  For example, in <u>Brewer v. Jefferson-Pilot Standard Life Insurance Co.</u>, the court concluded that an individual who "controlled the paperwork involved in [the plaintiff's] leave" and who fired the plaintiff because of circumstances associated with the leave, was acting as an employer.  333 F. Supp. 2d 433, 437–38 (M.D.N.C. 2004); <u>see also</u> <u>Eckert v. Schroeder, Joseph, & Assocs.</u>, 364 F. Supp. 2d 326, 328 (W.D.N.Y. 2005) (discussing liability for entities or individuals that had the power to control the employee); <u>Freemon v. Foley</u>, 911 F. Supp. 326, 332 (N.D. Ill. 1995) ("FMLA extends to all those who controlled 'in whole or in part' [the plaintiff's] ability to take a leave of absence and return to her position.").  In this case, there are no allegations that MLIC exercised any control over Mrs. Petty.  The amended complaint only indicates that MLIC issued the policy in which Mrs. Petty participated and refused to pay after her death.  There is nothing in the amended complaint to suggest that MLIC had any interaction with Mrs. Petty beyond the relationship of an insurer and an insured.  The court concludes that this relationship is insufficient to make MLIC the employer of Mrs. Petty for FMLA purposes.  Thus, MLIC's motion will be granted with regard to this claim.

    **c. Jury Demand**

Finally, Defendants argue that Plaintiff is not entitled to a jury trial, as he has requested.  Plaintiffs are not entitled to a jury trial for ERISA claims.  <u>Berry v. Ciba-Geigy Corp.</u>, 761 F.2d 1003, 1007 (4th Cir. 1985); <u>see also</u> <u>Phelps v. C.T. Enters.</u>,

19

Inc., 394 F.3d 213, 222 (4th Cir. 2005) (citing Berry). In contrast, FMLA does provide for a jury trial, at least for claims involving money damages. E.g., Frizzell v. SW Motor Freight, 154 F.3d 641, 643-44 (6th Cir. 1998). As to MLIC, the FMLA claim will be dismissed and only the ERISA claim remains, so Plaintiff is not entitled to a jury trial on his claims against MLIC. As to CBS, both FMLA and ERISA claims remain, so Plaintiff would be entitled to have a jury hear at least some of the issues involved in those claims.

**IV. CONCLUSION**

For the foregoing reasons,

IT IS ORDERED that Defendant Carolina Biological Supply's Motion to Dismiss [7] is DENIED.

IT IS FURTHER ORDERED that Defendant Medical Life Insurance Corporation's Motion to Dismiss [9] is GRANTED as to Plaintiff's FMLA claims and DENIED as to Plaintiff's other claims.

IT IS FURTHER ORDERED that Plaintiff Robert S. Petty, Jr. has thirty (30) days from the filing date of this memorandum opinion and order in which to submit to the court evidence that the insurance policy referenced in the amended complaint is not an ERISA plan.

This the 5th day of September 2006.

_____
United States District Judge

20

Case 1:05-cv-00954-WLO-RAE   Document 14   Filed 09/05/06   Page 20 of 20